# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

Chambers of
Matthew J. Maddox
United States Magistrate Judge
MDD_MJMChambers@mdd.uscourts.gov



101 West Lombard Street
Chambers 3B
Baltimore, Maryland 21201
(410) 962-3407

March 14, 2023

TO ALL COUNSEL OF RECORD

Re:     *Krista M. v. Kijakazi*
        Civil No. MJM-21-2474

Dear Counsel:

On September 28, 2021, Plaintiff Krista M. commenced this civil action seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA," "Defendant") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act. (ECF No. 1). Pending before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 17) and Defendant's Motion for Summary Judgment (ECF No. 19).[1] I have reviewed the pleadings and the record in this case and find that no hearing is necessary. Loc. R. 105.6. (D. Md. 2021).

The Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §§ 405(g), 1383(c)(3); *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020). Under this standard, Plaintiff's motion will be denied, Defendant's motion will be granted, and the SSA's decision will be affirmed.

## I.     **Background**

Plaintiff filed her application for DIB and SSI in 2017, alleging disability beginning on August 11, 2015. (R. 228, 238). Plaintiff's application was initially denied on June 13, 2017, and the initial determination was affirmed upon reconsideration on October 26, 2017. (R. 164–77). Thereafter, Plaintiff requested an administrative hearing, and Administrative Law Judge ("ALJ") Brian Rippel held a video hearing on November 19, 2018. (R. 32–69). The ALJ issued an unfavorable decision on February 4, 2019. (R. 12–31) The Appeals Council denied Plaintiff's request for review, and Plaintiff commenced an action for judicial review by the U.S. District Court for the District of Maryland. (R. 1–6; *Krista M. v. Saul*, Civ. No. DLB-20-45, ECF No. 1 (D. Md.

---

[1] The parties have consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 3; ECF No. 4).

*Krista M. v. Kijakazi*
Civil No. MJM-21-2474
March 14, 2023
Page 2

Jan. 8, 2020)). The Honorable Deborah L. Boardman ordered remand of the matter to the SSA upon the Commissioner's consent motion for remand. (R. 668; *Krista M.*, Civ. No. DLB-20-45, ECF No. 21 (D. Md. Dec. 10, 2020)). On remand, the Appeals Council vacated the ALJ's earlier decision and remanded the case to the ALJ. (R. 673–75). ALJ Rippel, presiding again, held a telephone hearing on June 10, 2021. (R. 554, 1068). Plaintiff, who was represented by counsel, testified at the hearing. (R. 561–75). An impartial vocational expert also appeared and testified. (R. 575–82). Following the hearing, the ALJ issued a decision denying Plaintiff's claims for DIB and SSI on July 27, 2021. (R. 1086). Plaintiff then filed this civil action seeking judicial review under 42 U.S.C. § 405(g).

## II.    The SSA's Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining Plaintiff's disability claims, the ALJ followed the five-step sequential evaluation of disability set forth in 20 C.F.R. § 416.920.

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

If the first three steps do not yield a conclusive determination of disability, the ALJ then assesses the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The ALJ determines the claimant's RFC by considering all of the claimant's medically determinable impairments, regardless of severity. *Id.* The claimant bears the burden of proof through the first four steps of the sequential evaluation. *Id.* If she makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (quoting 20 C.F.R. §§ 416.920, 416.1429).

In this case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 11, 2015. (R. 1071). At step two, the ALJ found that Plaintiff had the following severe impairments: bursitis and patellofemoral syndrome of the left knee, obesity, major depressive disorder, panic disorder, and posttraumatic stress disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments set forth

in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 1072). Then, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except:

> [Plaintiff] would be limited to occasional pushing and/or pulling (including foot control operations) with the left lower extremity; occasional balancing as defined in the SCO (the Selected Characteristics of Occupations defined in the Dictionary of Occupational Titles); occasional climbing ramps or stairs; occasional stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; occasional exposure to workplace hazards (including unprotected heights and dangerous machinery); simple, routine tasks in entry-level, unskilled work with instructions that are not involved; while the individual can sustain concentration and persistence for 2-hour segments, the job must include routine, customary breaks after about two-hour periods of work; no fast-paced production rate (defined as a setting in which a rapid pace of work is set by a conveyor belt or other similar external source, as well as rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other); low- stress work (defined as involving only occasional independent decision making and/or changes in the work setting); requiring no interaction with the public; occasional interaction with co-workers or supervisors; and no tandem tasks with co-workers.

(R. 1075). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work as a home attendant. (R. 1084). Lastly, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 1085). Thus, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act. (R. 1085–86).

### III.     Standard of Review

The Court reviews an ALJ's decision to ensure that the ALJ's findings "are supported by substantial evidence and were reached through application of correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (internal quotation marks and citations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal brackets and citations omitted). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.* (citation omitted).

### IV.     Discussion

This case centers around the ALJ's assessment of Plaintiff's RFC. Specifically, Plaintiff claims that the ALJ erred in failing to analyze the opinions of Plaintiff's treating sources in accordance with the six factors set forth in 20 C.F.R. § 404.1527(c) after deciding not to give

"controlling weight" to those opinions. (ECF No 17-2 at 16–29). Plaintiff argues that the ALJ accorded "little weight" to the opinion of Plaintiff's treating physician, Dr. Rajendra Lowtan, based upon mischaracterizations of Plaintiff's mental examinations as unremarkable and her treatment as conservative, concluding that Dr. Lowtan's opinion was inconsistent with these erroneous findings. (ECF No 17-2 at 20–25). According to Plaintiff, the ALJ was required to give greater weight to Dr. Lowtan's specialty as Plaintiff's treating psychiatrist but instead relied upon the sources with no mental health specialization. (ECF No. 17-2 at 20). Plaintiff secondly argues that the ALJ committed a similar error when he discounted the opinion of mental health professional Amy Lander and did not properly consider the 20 C.F.R. § 404.1527 factors when assessing Ms. Lander's opinion. (ECF No. 17-2 at 27–29). Plaintiff avers that given the alleged errors by the ALJ, this Court should reverse the denial of disability benefits and remand for a calculation of those benefits. (ECF No. 17-2 at 29–30).

### A. ALJ's Assessment of Medical Opinions in Determining RFC

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). The RFC assessment represents the most a claimant can do despite any physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). Thus, when an ALJ assesses a claimant's RFC, he is expressing it in terms of the claimant's maximum remaining ability to perform sustained work. *See* SSR 96-8p, 1996 WL 374184, at *2. The RFC assessment must be based on all of the relevant evidence in the case record, such as: medical history, medical signs and laboratory findings, treatment records, reports of daily activities, lay evidence, medical source statements, effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured living environment, and work evaluations, if available. *See* SSR 96-8p, 1996 WL 374184, at *5. "In performing this assessment, an ALJ 'must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations).'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (citing *Mascio*, 780 F.3d at 636). "In other words, the ALJ must both identify evidence that supports [their] conclusion and 'build an accurate and logical bridge from [that] evidence to [their] conclusion.'" *Id.* (citing *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

For claims—like Plaintiff's—filed before March 27, 2017, 20 C.F.R. § 404.1527 outlines the ALJ's assessment of medical opinions the ALJ receives from "acceptable medical sources," 20 C.F.R. § 404.1527(a)(1), such as "a claimaint's treating physician or other, non-treating physicians[,]" *Shelley C. v. Comm'r of Soc. Sec. Admin.*, --- F.4th ----, No. 21-2042, 2023 WL 2147306, at *7 (4th Cir. Feb. 22, 2023). "Generally, ALJs possess the discretion to determine the level of weight given to each medical opinion provided and received." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ observes the "treating physician rule[,]" by which a treating physician's medical opinion is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 384 (4th

Cir. 2021) (citing 20 C.F.R. § 404.1527(c)(2)). If the treating physician's medical opinion is not afforded controlling weight, the ALJ must consider the following factors to determine how much weight is appropriate:

> (1) the length of the physician's treatment relationship with the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) whether the medical evidence in the record supports the physician's opinion, (5) the consistency of the physician's opinion with the entirety of the record, and (6) the treating physician's specialization.

*Shelley C.*, --- F.4th ----, 2023 WL 2147306, at *7 (citing 20 C.F.R. § 404.1527(c)). The ALJ is not required to outline a factor-by-factor analysis, but the ALJ's decision must show "meaningful[] consider[ation]" of each factor "before deciding how much weight to give the opinion." *Dowling*, 986 F.3d at 384. Opinions from a medical professionals "who are not acceptable medical sources" are considered using the same factors, but "not every factor for weighing opinion evidence will apply in every case because the evaluation of [such opinions] depends on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1). The term "acceptable medical source" is defined in 20 C.F.R. § 404.1502(a) to include certain licensed physicians, psychologists, optometrists, podiatrists, speech-language pathologists, audiologists, advanced practice registered nurses, and physician assistants.

### B. Dr. Lowtan's and Ms. Lander's Opinions

Plaintiff argues that the ALJ erred in deciding to give "little weight" to the opinions of Dr. Rajendra Lowtan and Amy Lander in determining Plaintiff's RFC. (ECF No. 17-2 at 16–29). Dr. Lowtan was Plaintiff's treating psychiatrist, and Ms. Lander was a licensed clinical social worker. Both practitioners were employed by Committed to Change, PC, a mental health services practice that provided services and conducted mental health assessments of Plaintiff for several years. On October 18, 2017, Dr. Lowtan completed a Mental Impairment Report for Plaintiff in which she noted Plaintiff's diagnoses for posttraumatic stress disorder, panic disorder, and major depressive disorder; recorded various mental health symptoms reported by Plaintiff, including struggles with concentration, focus, memory, and anxiety; and ultimately opined that, due to her symptoms, Plaintiff "may display difficulty attending work consistently." (R. 431–32). Ms. Lander produced a letter dated March 24, 2021, in which she opined, among other things, that Plaintiff's anxiety and depression were severe and extreme, she had "gotten progressively worse over the [previous] nine months," and she "would not be able to function in the workplace and keep a steady job." (R. 876–77). The ALJ gave "little weight" to the opinions of both Dr. Lowtan and Ms. Lander. (R. 1079, 1081).

### 1. Decision Not to Give the Opinions Controlling Weight

Substantial evidence supported the ALJ's decision not to afford "controlling weight" to the opinions of Dr. Lowtan and Ms. Lander. First, although Plaintiff refers to Ms. Lander as her "treating psychotherapist," (ECF No. 17-2 at 26), the Court finds no confirmation that Ms. Lander

ever treated Plaintiff or that she was an "acceptable medical source" whose opinion was entitled to any particular weight. Licensed clinical social workers and psychotherapists are not among the categories medical professionals listed in the operative definition of "acceptable medical source." *See* 20 C.F.R. § 404.1502(a); *Grotts v. Kijakazi*, 27 F.4th 1273, 1277 (7th Cir. 2022) (not all licensed medical professionals are "treating sources" or "acceptable medical sources"). Because Ms. Lander was not Plaintiff's "treating physician," her opinion was not entitled to "controlling weight" before the ALJ.[2]

Dr. Lowtan, on the other hand, was Plaintiff's psychiatrist and "treating physician" at Committed to Change. (R. 431–32, 1079). However, the ALJ correctly noted that Dr. Lowtan's opinion was based largely on Plaintiff's reports about her own symptoms. (R. 1079). Specifically, information Dr. Lowtan recorded in the Mental Impairment Report regarding any impairments in Plaintiff's memory and concentration and Plaintiff's ability to perform routine, repetitive tasks was expressly based on Plaintiff's reports—i.e., "pt report difficulty leaving the home due to social anxiety"; "per pt report, trouble w/ long & short term memory"; "pt reports difficulty focusing & completing tasks"; and "pt can complete tasks however reports struggling w/ focus & concentration." (R. 431–32). These findings, based on Plaintiff's self-reports, were directly related to Dr. Lowtan's conclusion regarding Plaintiff's ability to work on a regular basis. (R. 432). The ALJ may discount a treating physician's opinion if it "is based largely on the claimant's self-reported symptoms[,]" *Curtis W. v. Saul*, Civ. No. TJS-18-3037, 2019 WL 6872869, at *3 (D. Md. Dec. 17, 2019), rather than "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2). Additionally, the ALJ correctly determined that Dr. Lowtan's opinion, like Plaintiff's subjective complaints about the severity of her mental impairments generally, were not consistent with the record evidence. (R. 1076, 1079, 1081–3). Because Dr. Lowtan's opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "was inconsistent with the other substantial evidence" in the record, the ALJ was not required to give Dr. Lowtan's opinion controlling weight. *Dowling*, 986 F.3d at 384 (4th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)(2)).

Because the ALJ did not afford controlling weight to Dr. Lowtan's medical opinion, he was required to consider the six factors enumerated in 20 C.F.R. § 404.1527(c) in deciding the weight to give Dr. Lowtan's opinion. *See Dowling*, 986 F.3d at 384; *Shelley C.*, --- F.4th ----, 2023 WL 2147306, at *7. Although Ms. Lander was not an "acceptable medical source," the circumstances of this case may have called for the ALJ to consider the same factors in deciding the weight to assign Ms. Lander's opinion. *See* 20 C.F.R. § 404.1527(f)(1) ("Although we will consider these opinions using the same factors as listed in paragraph (c)(1) through (c)(6) in this section, not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case.").

---

[2] Even if Ms. Lander was Plaintiff's "treating physician" and her opinion was entitled to deference under the "treating physician rule," the ALJ had ample reason not to give her opinion controlling weight, for reasons explained herein.

*Krista M. v. Kijakazi*
Civil No. MJM-21-2474
March 14, 2023
Page 7

### 2. Length, Nature, and Extent of Treatment Relationship, and Frequency of Examination

The first three factors the length of the treatment relationship between the source and the claimant, the source's frequency of examining the claimant, and the nature and extent of the treatment relationship between the source and the claimant. 20 C.F.R. § 404.1527(c)(2)(i),(ii); *see also Shelley C.*, --- F.4th ----, 2023 WL 2147306, at *7. Generally, a treating provider's opinion is given more weight the longer that provider has treated the claimant. 20 C.F.R. § 404.1527(c)(2)(i). Additionally, a medical opinion is generally entitled to greater weight the greater number of times the treating source has seen the claimant. *Id.* "[T]he more knowledge a treating source has about [a claimant's] impairment(s)[,]" the more weight that is given to that source's opinion. 20 C.F.R. § 404.1527(c)(2)(ii). The ALJ "look[s] at the treatment the source has provided[,]" and the "kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." *Id.*

Here, the ALJ noted that Dr. Lowtan was "the claimant's psychiatrist at Committed to Change" and that Plaintiff was treated at Committed to Change between March 2017 and February 2021.[3] (R. 1078, 1080, 1081). The ALJ specifically noted that Dr. Lowtan completed mental status examinations of Plaintiff and specifically cited these records. (R. 1079, 1080, 1082). The records reflect the frequency with which the psychiatrist examined Plaintiff, showing that Dr. Lowtan saw Plaintiff on an approximately monthly basis between March 2017 and December 2018, a period less than two years. (R. 404–20, 431–32, 448–67, 863–75). Thus, the ALJ's decision reflects consideration of the length of the treatment relationship between Plaintiff and Dr. Lowtan and the frequency of Dr. Lowtan's examinations of Plaintiff.

Regarding the nature and extent of the treatment relationship, the ALJ specifically noted that Plaintiff received outpatient treatment for her mental impairments without hospitalization, cited to Committed to Change records reflecting this treatment, and determined that her mental health treatment was "conservative" overall. (R. 1082–83). The records cited by the ALJ reflect that, as part of her outpatient treatment, Plaintiff received therapy and was prescribed psychotropic medications by Dr. Lowtan. (R. 402–20, 445–67, 800–75, 896–917).

Plaintiff takes exception to the ALJ's description of her mental health treatment as "conservative" and argues that the ALJ ignored the fact that Plaintiff was prescribed medications to treat her mental impairments. (ECF No. 17-2 at 24). Although the ALJ did not specifically note in his second decision, challenged here, that Plaintiff was treated with psychotropic medications prescribed by Dr. Lowtan, he did note this fact in his first opinion, dated February 4, 2019. (R.

---

[3] Both a Mental Impairment Report completed by Dr. Lowtan in October 2017 and a letter submitted by Amy Lander in March 2021 indicate that Plaintiff had been a patient of Committed to Change since 2012. (R. 431–32, 876–77). The ALJ cited and closely examined both of these documents in his decision. (ECF No. 15 at 17, 19). There is no indication in the record, however, that either Dr. Lowtan or Ms. Lander treated Plaintiff the entirety of the time frame in which she received services at Committed to Change or how often she received these services prior to March 2017.

637). Even assuming, *arguendo*, that the ALJ erred in failing to note Plaintiff's mental health treatment included medication in his second decision, any such error would be harmless because this aspect of Plaintiff's treatment does not, without more, undermine the ALJ's conclusion that the treatment she received for her mental health impairments was generally conservative. "There is no bright-line rule for what constitutes 'conservative' versus 'radical' treatment." *Brian H. v. Saul*, No. 5:19-CV-00029, 2020 WL 4551672, at *9 (W.D. Va. July 13, 2020), *report and recommendation adopted*, No. 5:19-CV-29, 2020 WL 4548127 (W.D. Va. Aug. 6, 2020) (quoting *Gill v. Astrue*, No. 3:11cv85, 2012 WL 3600308, at *6 (E.D. Va. Aug. 21, 2012)) (cleaned up). "[M]edications and counseling may be appropriately considered conservative treatment for depression and anxiety[.]" *Id.* (citation omitted); *see also Amoroso v. Comm'r of Soc. Sec.*, No. 5:19CV281, 2020 WL 7755437, at *7 (N.D. W.Va. Nov. 24, 2020), *report and recommendation adopted sub nom. Amoroso v. Saul*, No. 5:19-CV-281, 2020 WL 7753076 (N.D. W.Va. Dec. 29, 2020) (referring to medication for depression and anxiety as a conservative treatment measure); *cf. Dunn v. Colvin*, 607 F. App'x 264, 271–72 (4th Cir. 2015) (declining to reweigh evidence regarding ALJ's finding that claimant's treatment, which included prescription medications, was "routine and conservative"); *but see, e.g.*, *Mason v. Colvin*, No. 1:12-CV-00584 GSA, 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013) (rejecting ALJ's finding that claimant received "conservative treatment" when treatment included "almost two years" of "antidepressants and antipsychotic medications" for "depression, anxiety, and auditory and visual hallucinations").

The instant case stands in stark contrast to *Shelley C.*, --- F.4th ----, 2023 WL 2147306, at *8, where the Fourth Circuit rejected the ALJ's finding that the claimant's treatment history was "routine and conservative." In *Shelley C.*, the claimant had been previously hospitalized following a suicide attempt and, upon discharge from the hospital, began "a rigorous treatment program" that included not only medication but "36 rounds" of transcranial magnetic stimulation therapy, a depression treatment "offered only to patients with the most severe, resistant cases." *Id.* Here, Plaintiff received outpatient therapy and certain psychotropic medications for the treatment of depression- and anxiety-related mental impairments. In view of the psychiatric progress notes included in the record, these treatment measures appeared to manage Plaintiff's conditions. (*See* R. 800–13 (psychiatric progress notes from September 2020 through March 2021, reflecting improvement in Plaintiff's mood, affect, concentration, thought content)). While not insignificant, Plaintiff's outpatient treatment does not undermine the ALJ's finding that this treatment was conservative. Even if the ALJ's consideration of the nature and extent of Plaintiff's treatment was inadequate, Plaintiff has failed to establish that any such error affected the weight the ALJ ultimately assigned to Dr. Lowtan's opinion. Any such error was therefore harmless and not a basis for remand.

As to Ms. Lander, there is little indication in the record of any treatment relationship between Plaintiff and Ms. Lander or that Ms. Lander ever examined Plaintiff. Plaintiff states in her memorandum before this Court that Ms. Lander was her "treating psychotherapist" (ECF No. 17-2 at 26), but that statement is not record evidence. Although Ms. Lander's letter dated March 24, 2021, displays the letterhead and return address of Committed to Change, where Plaintiff received mental health services and treatment from Dr. Lowtan (R. 876–77), Ms. Lander does not

claim to have ever treated or examined Plaintiff. Ms. Lander states that she was "immediately familiar with the limitations caused by [Plaintiff's] mental health" (R. 876), but she does not explain how or why she gained this familiarity or whether she gained it from having treated or examined Plaintiff. Plaintiff fails to cite any record evidence of any treatment she received from Ms. Lander, a treating relationship of any length she shared with Ms. Lander, or any examinations of her by Ms. Lander. Based on the record evidence, none of the first three 20 C.F.R. § 404.1527(c) factors suggest that the ALJ should have given Ms. Lander's opinion more than the "little weight" the ALJ ultimately gave it.

### 3. Supportability and Consistency

Turning to the fourth and fifth factors, the ALJ was required to consider each medical opinion's supportability and consistency with the entire record. 20 C.F.R. § 404.1527(c)(3),(4); *see also Shelley C.*, --- F.4th ----, 2023 WL 2147306, at *7. A medical opinion is generally entitled to greater weight if supported by relevant evidence, "particularly medical signs and laboratory findings," and a sound explanation. 20 C.F.R. § 404.1527(c)(3). Additionally, "the more consistent a medical opinion is with the record as a whole, the more weight" is generally given to that medical opinion. 20 C.F.R. § 404.1527(c)(4). Here, as previously noted, the ALJ found that Dr. Lowtan's opinion regarding difficulty Plaintiff would face "attending work consistently" stemmed primarily from Plaintiff's own reports, which indicated impairments in her concentration, focus, and memory. (R. 431–32; 1079). The ALJ determined that Dr. Lowtan's opinion "was not consistent with the claimant's overall mental status examinations … and treatment," noting that Plaintiff's mental status examinations were "generally unremarkable" and her treatment was "conservative." (R. 1079). As the ALJ correctly pointed out, Plaintiff's psychiatric progress notes generally indicated that she was alert, oriented, and cooperative; she had no memory deficits; her speech was normal; her intelligence was average; and her judgment and insight were fair. (R. 1079, 1082). The ALJ also correctly noted that Plaintiff's mood was commonly recorded as depressed and anxious in her mental status examinations (ECF No. 15 at 17), but Dr. Lowtan's opinion appears to have been based at least as much on Plaintiff's self-reported difficulties with concentration, focus, and memory (*see* R. 431–32). Dr. Lowtan's opinion was expressed in a Mental Impairment Report dated October 18, 2017. (*Id.*) Prior to that report, Plaintiff's psychiatric progress notes indicated that Plaintiff's memory had "no deficit," that Plaintiff commonly displayed preoccupations and a circumstantial thought process, and that Plaintiff's concentration was generally "fair" (R. 404–20), although at one point she was found to be "easily distracted" (R. 411), and, at another point, her concentration was deemed "good." (R. 416). Beginning in March 2019 and continuing for two years thereafter, however, Plaintiff's thought content was generally deemed "appropriate" and rarely preoccupied, her concentration was more often regarded as "good" than "fair," and she continued to show "no deficit" in memory. (R. 800–56). Plaintiff's self-reports in October 2017 regarding her memory, focus, and concentration, and the opinion rendered by Dr. Lowtan based upon these self-reports, certainly where inconsistent with the findings recorded in Plaintiff's psychiatric progress notes between March 2019 and March 2021. Having considered the supportability of Dr. Lowtan's opinion and its consistency with the record evidence, the ALJ satisfied these factors in accordance with 20 C.F.R. § 404.1527(c) in deciding the weight to assign

Dr. Lowtan's opinion, and substantial evidence supported the ALJ's finding that Dr. Lowtan's opinion lacked adequate support and was inconsistent with the record evidence.

Regarding Ms. Lander's opinion on the severity of Plaintiff's mental impairments and ability to function in the workplace, the ALJ indicated that this opinion was not supported by, and that it was inconsistent with, other records regarding Plaintiff's mental status, including records from Committed to Change. (R. 1081). Ms. Lander's opinion was expressed in a letter purporting to outline a "Medical Narrative," dated March 24, 2021. (R. 876–77). In the letter, Ms. Lander noted that Plaintiff suffered from "extreme anxiety," "rapid mood shifts, racing thoughts, severe depression," and various functional impairments. (*Id.*) Ms. Lander further stated that Plaintiff's impairments "ha[d] gotten progressively worse over the [previous] nine months" and, on that basis, opined that Plaintiff "would not be able to function in the workplace and keep a steady job." (R. 877). Ms. Lander's opinion was inconsistent with psychiatric progress notes and mental status examinations recorded by Committed to Change. (R. 1081). Indeed, Committed to Change records from between March 2020 and March 2021 reflect improvement in Plaintiff's condition during the nine months preceding Ms. Lander's letter. During this period, Plaintiff generally presented no preoccupations or distractibility. (R. 800–25). Between March and August 2020, Plaintiff commonly presented a depressed and/or anxious mood and flat affect. (R. 815–25). These conditions appear to have improved between September and December 2020. (R. 807–13). Between December 2020 and March 2021, Plaintiff generally presented a normal mood, "appropriate" affect, and "appropriate" thought content. (R. 800–05). Therefore, the ALJ sufficiently considered the supportability and consistency factors pursuant to 20 C.F.R. § 404.1527(c)(3),(4) when assessing what weight to give Ms. Lander's opinion, and substantial evidence supported the ALJ's finding that Ms. Lander's opinion lacked adequate support and was inconsistent with the record evidence.

### 4. Medical Sources' Specializations

The sixth factor is the medical source's specialization. 20 C.F.R. § 404.1527(c)(5). A provider's medical opinion is "generally give[n] more weight" when the provider is a specialist opining "about medical issues related to his or her area of specialty" than when the provider "is not a specialist." *Id.* Here, the ALJ recognized Dr. Lowtan's relevant specialization as Plaintiff's treating psychiatrist. (ECF No. 15 at 17). With that background, the ALJ only discounted Dr. Lowtan's opinion insofar as it was inconsistent with the record and supported primarily by Plaintiff's reports. (*Id.*) Plaintiff argues that the ALJ relied solely on an emergency room examination conducted by a nurse practitioner, a non-specialist, in discounting the opinion of Dr. Lowtan. (ECF No. 17-2 at 20–21). The citation to the emergency room examination was just one of several examples of findings that Plaintiff presented with normal and appropriate mood and affect and/or no psychiatric disturbances, which the ALJ also cited, and some of which findings were recorded by mental health specialists. (R. 1082; *see also* R. 330, 336, 356, 359, 416, 424, 444, 800, 879, 882, 884, 1060).

The ALJ also appropriately considered Ms. Lander's specialty as a mental health professional. (ECF No. 15 at 19). The first mention of Ms. Lander in the ALJ's decision was

followed by the suffix "LCSW-C," crediting Ms. Lander's credential as a licensed clinical social worker. (ECF No. 15 at 19); *see Tyheia S. v. Kijakazi*, Civ. No. ADC-21-3185, 2022 WL 17585283, at *5 (D. Md. Dec. 12, 2022) (finding that listing the suffix "M.D." in the doctor's name as a sufficient consideration of the 20 C.F.R. § 404.1527(c)(5) factor).

In sum, the ALJ considered adequately considered all factors he was required to consider under 20 C.F.R. § 404.1527(c) in deciding to the weight to assign Dr. Lowtan's and Ms. Lander's opinions regarding the severity of Plaintiff's mental impairments and her ability to function at work.[4] Although both professionals specialized in mental health, Dr. Lowtan's opinion, from October 2017, regarding Plaintiff's mental health symptoms was based on self-reports that proved inconsistent with findings from mental status examinations conducted through March 2021. Ms. Lander's opinion was also inconsistent with, and unsupported by, these findings. The ALJ's decision to give Dr. Lowtan's and Ms. Lander's opinions "little weight" was well within the discretion of the ALJ and was supported by substantial evidence. *See Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."); *Shelley C.*, --- F.4th ----, 2023 WL 2147306, at *7 ("Generally, ALJs possess the discretion to determine the level of weight given to each medical opinion provided and received."); *Marshall v. Berryhill*, Civ. No. TMD 16-62, 2017 WL 1196488, at *4 (D. Md. Mar. 31, 2017) ("[T]he weighing of various evidence is precisely the typical province of the ALJ.") (citation omitted). This Court will not re-weigh these opinions or otherwise disturb the ALJ's conclusions. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) ("In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary.").

## V.   Conclusion

Because there is substantial evidence to support the ALJ's findings, and the findings were reached through application of the correct legal standards, Plaintiff's Motion for Summary Judgment (ECF No. 17) will be denied, and Defendant's Motion for Summary Judgment (ECF No. 19) will be granted. The SSA's decision will be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

A separate Order will follow.

Sincerely,

/S/
Matthew J. Maddox
United States Magistrate Judge

---

[4] Pursuant to 20 C.F.R. § 404.1527(c)(6), a claimant is permitted to raise other pertinent considerations not included within the six factors enumerated in 20 C.F.R. § 404.1527(c)(1)(i) through (5). Here, Plaintiff's arguments were limited to the ALJ's assessment under 20 C.F.R. § 404.1527(c)(2) through (5). Plaintiff does not cite any additional factors she claims the ALJ erred in failing to consider.